IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

R.P., R.P., and M.P.,

        Plaintiffs,

vs.                                                              CASE NO.: 4:03cv387-SPM

LEON COUNTY SCHOOL BOARD,
WILLIAM MONTFORD, Individually
and in his capacity as Superintendent,

        Defendants.

_____/

## ORDER ON PENDING MOTIONS

      This cause comes before the Court on all pending motions, but principally Defendants' motions for judgment on the administrative record (docs. 52, 53, 54) and Defendants' motions for summary judgment (doc. 51, 55).   The parties have fully briefed all issues.

### I.   BACKGROUND

      Plaintiff, MP, is an exceptional education student who was under 18 years of age at the time this suit was filed.  Plaintiffs RP and RP are his parents.  MP suffers from emotional problems, language impairment, and learning disability. He has been enrolled intermittently in the Leon County School District ("District") since 1996.  Plaintiffs allege that the District denied MP the free appropriate

public education to which MP was entitled under the Individuals with Disabilities Education Act[1] ("IDEA").  Plaintiffs also allege claims under § 504 of the Rehabilitation Act[2], under the Americans with Disabilities Act ("ADA")[3], under 42 U.S.C. § 1983, under the Florida Educational Equity Act[4], and for common law negligence.

Several proceedings occurred before the filing of this case.  First, in May 2001, MP's parents requested a due process hearing regarding the sufficiency of MP's individualized education program ("IEP") under the IDEA .  The dispute was settled at mediation, without a hearing.  MP's complaint was withdrawn without prejudice.

Second, on April 26, 2002, MP was arrested for possession of a controlled substance while at Lawton Chiles High School.  The District suspended MP for eight days and proposed a forty-five day (later reduced to 10 days) interim alternative educational placement for MP at the Second Chance School.  MP's existing IEP, as modified for his disciplinary behavior, remained in effect for the Second Chance School.

---

[1]  20 U.S.C. §§ 1400-1491.

[2]  29 U.S.C. § 794.

[3]  42 U.S.C. § 12131 *et seq.*

[4]  § 228.2001, Fla. Stat., now at § 1000.05 .

Because MP's parents were not satisfied with the IEP and were not satisfied with the Second Chance School as the interim alternative placement, they enrolled MP in the Hope School, which is a private school. They also requested a due process hearing, DOAH Case No. 02-1926E, as to whether the District was providing MP with a free appropriate public education as required under the IDEA.

On September 5, 2002, the Administrative Law Judge ("ALJ") ruled that MP's IEP and his alternative placement in the Second Chance School complied with the IDEA's requirements. The ALJ also ruled that the District was not required to reimburse MP's parents for private educational services. The ALJ refused to hear other issues raised by MP's parents regarding the sufficiency of the IEPs from 1997 to 2002 and various non-IDEA claims, finding that the proper scope of the hearing was limited to the disciplinary issues in accordance with 20 U.S.C. § 1415(k)[5]. All other issues, the ALJ ruled, should be addressed at a separate hearing. MP filed suit in federal court for review of these rulings and relief on other claims, which included all of the claims dismissed at the hearing and additional claims concerning extended year services in 2002 and an IEP for the 2002-2003 school year. The suit, MP One[6], is still pending.

---

[5] 20 U.S.C. § 1415 regulates the change of placement, for disciplinary reasons, of a child with a disability.

[6] Case number 4:02cv342.

Third, in October 2002, MP's parents requested a due process hearing, DOAH Case No. 0204179E, regarding the issues that were not addressed at the prior hearing.  The ALJ ruled that she had no jurisdiction to enforce the parties' mediation agreement from 2001.  Furthermore, because MP's parents had since raised all issues in federal court through MP One and insisted that the issues remain before the federal court, the ALJ dismissed the remaining claims.  MP then filed suit in federal court.  That suit, MP Two[7], is still pending.

Fourth, between June 2 and 23, 2003, MP was detained at the Leon Regional Juvenile Detention Center.  MP was enrolled in the Hope School at the time, but during his period of detention he received schooling at the detention center.  The schooling provided was not pursuant to an IEP because the District did not provide MP with an IEP at the beginning the 2003-2004 school year, although MP's parents requested an IEP in March 2003.  After MP arrived at the detention center, the district initiated the process for developing an IEP.  MP was released, however, before the IEP was developed.

MP's parents requested a due process hearing regarding the 2003-2004 IEP.  The ALJ ruled that MP was not entitled to an IEP during the 2003-2004 school year because MP was enrolled in a private school and receiving McKay

---

[7] Case number 4:03cv43.

Scholarship funds[8].   MP filed suit in federal court, resulting in MP Three, which is

the instant case.  MP One and MP Two have been consolidated into MP Three.

## II.    IDEA CLAIMS

Among the stated purposes of the IDEA is "to ensure that all children with

disabilities have available to them a free appropriate public education that

emphasizes special education and related services designed to meet their unique

needs."  20 U.S.C. § 1400(d)(1)(A).  A district meets its obligations to provide a

free appropriate public education when it provides "personalized instruction with

sufficient support services to permit the child to benefit educationally from that

instruction."  Bd. of Educ. v. Rowley, 458 U.S. 176, 206-07 (1982).

The personalized instruction requirement is satisfied through the

development of an IEP that describes the child's current educational levels,

annual and short-term goals for the child, and the special educational services

that the child will receive.  See 20 U.S.C. § 1414(d)(A).  The IEP is prepared by a

team that includes the child's parents, at least one regular education teacher, at

least one special education teacher, and a representative from a local

educational agency.  20 U.S.C. § 1414(d)(1)(B).  The local educational agency is

responsible for ensuring that the team reviews the IEP periodically, but not less

than annually, to determine whether the child is achieving the annual goals.  20

---

[8]  The John M. McKay Scholarships for Students with Disabilities Program,
1002.39, Fla. Stat.

U.S.C. § 1414(d)(4).

The IDEA also establishes procedural safeguards for parents and children.  See generally 20 U.S.C. § 1415.  Parents who are dissatisfied with an IEP may file a complaint with the district.  20 U.S.C. § 1415(b)(6).  On the complaint, there is a right to an impartial due process hearing, to be conducted by the state or local educational agency.  20 U.S.C. § 1415(f).  In Florida, the hearing may be conducted by an administrative law judge from the state of Florida Division of Administrative Hearings.  20 U.S.C. § 1415(f)(1); § 1003.57, Fla. Stat.  A suit may be filed in state or federal court for review of the hearing. 20 U.S.C. § 1415(i)(2).

On review, the issue of whether the educational agency has provided a free appropriate public education is a mixed question of law and fact that is subject to de novo review.  Sch. Bd. of Collier County v. K.C., 285 F.3d 977, 982-83 (11th Cir. 2002).  The Supreme Court has formulated a two-part test, which focuses on (1) whether the State has complied with the procedures set forth in the IDEA and (2) whether the IEP is reasonably calculated to enable the child to receive educational benefits.  Rowley, 458 U.S. at 206-207.  If the two-part test is met, then "the State has complied with the obligations imposed by Congress and the courts can require no more."  Id.

Because the court reviews the administrative record anew, the usual summary judgment principles of Federal Rule of Civil Procedure 56 do not apply.

Loren F. v. Atlanta Indep. Sch. Sys., 349 F.3d 1309. 1313 (11th Cir. 2003).

Instead, the court's review "is perhaps better described as judgment on the

record." Id., (quoting Beth B. v. Van Clay, 282 F.3d 493, 496 n.2 (7th Cir. 2002)).

The court should give due weight to administrative findings and give deference to

school authorities on matters involving educational expertise. Id. at 1314 n.5.

### A.    MP One–DOAH Case No. 0201926E

The crux of the first administrative proceeding, DOAH Case No. 02-

1926E, which led to the filing of MP One, was MP's change in placement, for

disciplinary reasons, from Lawton Chiles High School to the Second Chance

School for a ten-day period from May 13, 2002 to May 24, 2002.  This change in

placement was effected pursuant to 20 U.S.C. § 1415(k), which allows school

personnel to change the placement of a child with a disability "to an appropriate

interim alternative educational setting for the same amount of time that a child

without a disability would be subject to discipline, but not more than 45 days if . . .

the child knowingly possesses or uses illegal drugs . . . ."  20 U.S.C. §

1414(k)(1)(A)(ii)(II).

MP knowingly possessed illegal drugs, a felony offense, in school on

Friday, April 26, 2002.  As a result, he was suspended for a period of 8 days from

April 29, 2002 through May 8, 2002.  The parties agree that the suspension was

justified and the period of suspension did not exceed the applicable limits.

In accordance with Leon County School Board Policy 7.08, a student

possessing illegal drugs in school is recommended for expulsion.  When such an

offense is committed by a student receiving Exceptional Student Education

services, however, the student is placed in an alternative educational assignment

to Second Chance School pending the convening of an IEP meeting and a

manifestation determination.  A manifestation determination is a review

conducted pursuant to the IDEA by the IEP team and other qualified personnel to

determine the relationship between the child's disability and the behavior subject

to disciplinary action.  20 U.S.C. § 1415(4)(A).

Consistent with the policy, a meeting was scheduled for May 3, 2002 to

conduct a manifestation determination and to review MP's IEP.[9]  MP's mother,

RP, was not able to meet on May 3, so the meeting was rescheduled to May 13,

2002, the next date that RP and the other IEP team members were available.

In the meantime, the principal of MP's school met with other members of

MP's team without RP.  The IEP team members determined that MP could be

educated at the Second Chance School given the provisions of his current IEP

_____

[9]  A meeting had been held on April 15, 2002 to discuss MP's IEP for the
2002-2003 school year.  A second meeting was scheduled for April 29, 2002 to
finish discussing the IEP.  The second meeting was cancelled, over the objection
of RP, so that personnel from the Second Chance School could attend to discuss
the issue of MP's alternative interim placement.  A new IEP for 2002-2003 was
never developed.  Instead, through a meeting on May 13, MP's existing IEP was
amended in light of his conduct , his suspension, and assignment to the Second
Chance School.  MP did not attend the Second Chance School and instead
enrolled in private school without having an IEP for 2002-2003.

and any necessary modifications to address MP's behavioral issues.  The principal wrote RP to advise that MP would be assigned to the Second Chance School for a period of 45 days (which was reduced after the May 13 meeting to 10 days–the rest of the school year).  The principal further advised RP that the IEP team meeting and manifestation determination would be conducted.

The manifestation determination resulted in a finding that MP's behavior was a manifestation of his disability.  Therefore, MP was not recommended for expulsion.  He was, however, reassigned to the Second Chance School for the remainder of the school year, that is, a ten-day period from May 13, 2002 to May 24, 2002.

At the May 13 meeting, the team determined that MP's interim alternative placement to the Second Chance School would allow MP to continue to participate in the general curriculum and receive appropriate services to meet the goals set out in his IEP.  The team also determined that the Second Chance School could provide MP with services and modifications to help MP avoid behavioral problems in the future, specifically possession of illegal drugs.  The team, furthermore, determined MP could make up missed work at the Second Chance School to earn academic credit for the 2001-2002 school year.  These determinations are consistent with the provisions of the IDEA at 20 U.S.C. § 1415(k)(3) governing the determination of an appropriate alternative educational setting.

Plaintiffs' objections to MP's interim alternative placement to the Second Chance School and the ALJ's order approving of the same are numerous, but they appear to fall into four main categories.  First, Plaintiffs argue that the ALJ should not have approved the interim alternative placement without making the findings required under 20 U.S.C. §§ 1415(k)(2) and (6)(B)(ii).  Second, Plaintiffs argue that the District had no authority, without following the procedures for suspensions, to change MP's placement to the Second Chance School.[10]  Third, Plaintiffs argue that the District failed to follow state statutory prerequisites for assigning MP to the Second Chance School.  Fourth, Plaintiffs argue violations of various notice and hearing provisions of the IDEA.  Having carefully considered these arguments, the Court finds that the District's interim alternative placement of MP to the Second Chance School violated MP's rights under the IDEA.

The flaw with the District's determination, and the ALJ's order, is the failure to consider whether MP would present a risk of substantial injury to himself or others if he returned to Lawton Chiles High School after his initial suspension.  Although 20 U.S.C. § 1415(k)(1)(A)(ii) appears to allow the school board to automatically change a student's placement when the student possesses illegal drugs, the review provisions of 20 U.S.C. § 1415(6)(B)(ii) require that several determinations be made to justify the placement if appealed

---

[10]  Leon County School Board Policy 7.08(12)(B)(4) requires certain administrative procedures to be followed for a suspension more than 10 days.

by the parent.  One such determination, incorporated by reference to 20 U.S.C. §

1415(k)(2), is a determination "that the public agency has demonstrated by

substantial evidence that maintaining the current placement of such child is

substantially likely to result in injury to the child or to others."  20 U.S.C. §

1415(k)(2).  No such determination was made in this case, either by the District

or by the ALJ.  To the contrary, testimony at the hearing established that MP was

not dangerous.

The District and the ALJ proceeded on an assumption that an interim

alternative placement is automatically justified whenever a child possesses illegal

drugs at school.  No required determination of risk was made, either at a

disciplinary hearing preceding the change in placement or at the administrative

hearing before the ALJ.  While MP also alleges violations of District policy in

discipline and state law in choosing the Second Chance School as an

appropriate placement, it is not clear whether these provisions are incorporated

into the requirements of the IDEA.  In any event, had the policies and laws been

followed, and the required determinations under 20 U.S.C. § 1415(k)(2) been

made, MP's assignment to the Second Chance School could not be sustained

given the administrative record.

The ALJ also ruled that the District was not required to reimburse MP's

parents for private educational services.  To the extent MP sought these services

in response to his inappropriate placement at the Second Chance School, the

District should reimburse MP for these costs.

The ALJ refused to hear other issues raised by MP's parents regarding the sufficiency of the IEPs from 1997 to 2002 and various non-IDEA claims, finding that the proper scope of the hearing was limited to the disciplinary issues in accordance with 20 U.S.C. § 1415(k).  With respect to the non-IDEA claims, the Court finds no error.  There is nothing to indicate that the administrative review procedures of the IDEA attach to non-IDEA claims in a manner that requires an administrative determination of the non-IDEA claims (as opposed to requiring exhaustion of administrative remedies on the IDEA claims that form the basis for the non-IDEA claims).

With respect, however, to IDEA issues concerning whether the District was providing MP with a free appropriate public education for past years, there is no sound basis for the ALJ to refuse hearing these claims and requiring MP to raise them in a separate hearing.  Furthermore, it is apparent from the record that the ALJ did not make any appropriate findings concerning the sufficiency of MP's 2001-2002 IEP and instead limited his consideration to the issue of whether that IEP could be implemented at the Second Chance School and whether the Second Chance School was an appropriate placement.  Judgment on the administrative record is therefore not appropriate on these issues concerning MP's 2001-2002 IEP and past IEPs.  The appropriate course is to remand these issues to the ALJ for an administrative due process hearing.  See Sch. Bd. of

Collier County v. K.C., 285 F.3d 977, 981 (11th Cir. 2002) (district court should

not conduct a de novo trial on IDEA issues); Ass'n of Retarded Citizens of Ala. v.

Teague, 830 F.3d 158, 160 (11 th Cir. 1987) (recognizing the importance of the

development of a factual record prior to court review); M.E. v. Buncombe County

Bd. of Ed., 72 Fed. Appx. 940, 2003 WL 21958300, (4th Cir. 2003) unpublished

(district court does not have authority to decide merits of IDEA issue in the first

instance when the administrative hearing below was improperly dismissed as a

matter of law).

### B.    MP Two–DOAH Case No. 0204179E

On October 28, 2002, MP sought a hearing, DOAH Case No. 0204179E,

on all of the claims previously dismissed by the ALJ, plus two additional claims.

Unfortunately, MP included the merits of these same claims in a suit filed on

October 4, 2002 in federal court, MP One, compounding the problems associated

with the first dismissal.  Although the District suggested that MP seek dismissal

of the claims he raised in federal court or, alternatively, seek a remand for an

administrative determination, MP maintained his claims in federal court.

As a result, the ALJ dismissed all claims in DOAH Case No. 0204179E

without ruling on the merits.  The dismissal was appropriate not only because MP

filed his claims with the federal court first[11], but also in light of the federal court's

---

[11]  See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 675 F.2d
1169, 1174 (11th Cir. 1982) ("In the absence of compelling circumstances, the

role as a court of review over the decisions made by the ALJ with respect to IDEA matters generally.  20 U.S.C. § 1415(i)(2).  Furthermore, the ALJ's determination in DOAH Case No. 02-1926E that the District was providing MP with a free appropriate public education as of the 2001-2002 IEP was specifically on review; and the issue involved was intertwined with the issue of whether MP's previous IEPs were adequate.  Accordingly, the Court finds no error in the dismissal of DOAH Case No. 0204179E.

### C.    MP Three–DOAH Case No. 03-1584

The crux of DOAH Case No. 03-1584 was the District's failure to provide special education and related services to MP while MP was at the Juvenile Detention Center and the refusal of the District to prepare an IEP for MP for 2003-2004.

 MP's parents requested an IEP in March 2003 while MP was enrolled at a private school.  The District refused to provide MP with an IEP because it found that MP was not entitled to special education and related services, given his enrollment in a private school.

Between June 2 and 23, 2003, MP was detained at the Leon Regional Juvenile Detention Center.  During his period of detention, MP was not at the private school and he received schooling at the detention center. It is undisputed

---

court initially seized of a controversy should be the one to decide the case . . . .").

that he received no special education and related services at the detention

center.  Instead, on June 9, 2003, the District began the process of developing a

new IEP for MP.  A meeting was set for June 17, but later canceled by RP due to

illness.  The meeting was rescheduled for June 24, 2003 at the request of RP.

The June 24 meeting did not take place, however, because MP was released

from the detention center on June 23.

　　　　While at the detention center, District officials attempted to implement the

curriculum MP was receiving at the private school, as communicated to officials

by RP.  According to the District, MP received tutoring services and made

academic progress while he was at the detention center.  MP's detention center

teachers testified at the administrative hearing that MP was a good student and

that he learned while he was at the detention center.

　　　　The ALJ in DOAH Case No. 03-1584 found that MP was not entitled to an

IEP for the 2003-2004 school year because MP had been enrolled in a private

school and because MP enrolled at a time when a determination had been made,

in the first administrative proceeding–DOAH Case No. 02-1926E, that the District

was providing MP with a free appropriate public education as required by the

IDEA.  The ALJ could not appropriately second-guess this determination, since it

had not been overturned by the federal court.

　　　　Under IDEA regulations, a local educational agency is not required to

provide special education and related services to students enrolled in private

school.  34 C.F.R. § 300.454(a)(1).  Although an exception exists that requires the provision of services when a student enrolls in private school in circumstances where the agency fails to provide a free appropriate public education, 20 U.S.C. § 1412(10)(C) and 34 C.F.R. § 403(a), the ALJ could not apply that exception to MP given the prior administrative finding, which was still on review.  Accordingly, the Court finds no error in the ALJ's dismissal of MP's claims regarding the failure to develop an IEP for the 2003-2004 school year.

With regard to the failure to provide MP with special educational services while at the detention center, it is undisputed that special educational services could not be provided to MP without first having a current IEP.  IDEA regulations require that an IEP be in effect "before special education and related services are provided to an eligible child."  34 C.F.R. § 300.342(b)(1)(i).  Furthermore, regulations concerning the transfer of a child within a state from one public agency to another require the new agency to provide services to a child, either by adopting a new IEP or implementing the IEP of the former agency.  Appendix A to 34 C.F.R. Part 300.  MP, having transferred to the juvenile detention center from a private school as opposed to another public agency, did not have an IEP. It was appropriate, therefore, for the District to develop an IEP for MP before providing special education and related services.

MP contends that the services could have been provided to MP without the development of a new IEP because MP had an IEP from the 2001-2002

school year.  That IEP could be construed as a current IEP in conjunction with

the IDEA stay-put provision, 20 U.S.C. § 1415(j).  The provision reads in relevant

part:

> [D]uring the pendency of any proceedings conducted pursuant to
> this section, unless the State of local educational agency and the
> parents otherwise agree, the child shall remain in the then-current
> educational placement of such child, or, if applying for initial
> admission to a public school, shall, with the consent of the parents,
> be placed in the public school program until all such proceedings
> have been completed.

20 U.S.C. § 1415(j).

The problem, however, is that both the District and MP proceeded to

develop an IEP for MP, without insisting that MP stay-put under his old IEP or

have services resumed under his old IEP.  Furthermore, MP had been attending

private school for a significant period of time since the development of the 2001-

2002 IEP.  MP had challenged that very same IEP as insufficient in numerous

previous proceedings.  It is doubtful under these circumstances that the 2001-

2002 IEP would have been sufficient to provide MP with a free appropriate public

education while at the detention center, and MP does not contend that he would

have been satisfied with services provided pursuant to that IEP.

The District's actions in developing a new IEP for MP was not contrary to

any provision of the IDEA.  The District did not engage in any inordinate delay in

developing a new IEP.  Rather, it was MP's brief period of detention that

prevented the completion of the new IEP and the provision of special education

and related services pursuant to that IEP.  Accordingly, the Court finds no IDEA violation with respect to the period of time between June 2 and 23, 2003 when MP was at the detention center.

### D.    Conclusion

Plaintiff's viable IDEA claims in this case boil down to his inappropriate placement at the Second Chance School and subsequent enrollment in a private school, for which the District should reimburse MP.  As for the other IDEA claims, Plaintiff cannot prevail on his claim for denial of special educational and related services while at the detention center.  Accordingly, the Court will grant the District's motion for judgment on the administrative record as to this matter.

With regard to the dismissed IDEA claims, the dismissal in DOAH Case No. 02-1926E was not appropriate.  The dismissal of Plaintiff's IDEA claims in subsequent administrative proceedings was appropriate given the procedural posture of the case combined with the purported finding of the ALJ in DOAH case no. 02-1926E that MP was receiving a free appropriate public education.  In any event, Plaintiffs should have the opportunity to present all of these dismissed claims in an administrative proceeding to allow Plaintiffs to exhaust their administrative remedies.

Although the District contends that some of these claims should be dismissed on statute of limitations grounds, Plaintiffs contend that they have not raised any claims that precede their complaint in DOAH case no. 02-1926E by

four years.  To the extent they may have, however, those claims are barred by

the four-year statute of limitations.  The District has not made a sufficient

showing that the claims should otherwise be barred by the doctrines of laches or

waiver.

## II.      NON-IDEA CLAIMS

Plaintiffs have raised a variety of claims under the Rehabilitation Act, the

ADA, § 1983, the Florida Educational Equity Act, and for common law

negligence.  A review of the claims shows that they are all premised on violations

of the rights afforded to MP under the IDEA and that they are not separately

actionable.

### A.      Rehabilitation Act and ADA

"[A] school district that provides the free appropriate public education to

which a disabled student is entitled under the IDEA owes the student no broader

free public education under the Rehabilitation Act or ADA."  C.P. v. Leon County

Sch. Bd., No. 4:03cv65-RH/WCS, 2005 WL 2133699, at *3 (N.D. Fla. Aug. 27,

2005).  Furthermore, before bringing suit under the Rehabilitation Act or the ADA

for violation of IDEA provisions, a litigant must first exhaust the IDEA's

administrative procedures.  Babicz v. Sch. Bd. Of Broward County, 135 F.3d

1420, 1422 (11th Cir. 1998).  If it turns out that the school district's educational

judgments were incorrect, a violation of the Rehabilitation Act or the ADA may

arise, but only if the school district did not act in good faith to provide an

appropriate education.  C.P., 2005 WL 2133699, at *4.

Applying these principles to the instant case, the Court finds that Plaintiffs cannot sustain any claims under the Rehabilitation Act or ADA regarding MP's educational services at the detention center since the Court has found that no IDEA violation occurred.   Furthermore MP's dismissed IDEA claims cannot be relied upon as a basis for claims under the Rehabilitation Act or ADA because MP has not properly exhausted administrative remedies.  Dismissal of these claims without prejudice is therefore appropriate.  Babicz, 135 F.3d at 1422.

With respect to Plaintiffs' claims concerning MP's placement at the Second Chance School, although the placement was not appropriate, there is no evidence of bad faith, gross misjudgment, or intentional discrimination to support a claim under the Rehabilitation Act or ADA.  To the contrary, the IDEA appears to allow the school board to automatically change a student's placement when the student possesses illegal drugs, 20 U.S.C. § 1415(k)(1)(A)(ii).  The positioning of additional requirements in a separate provision, 20 U.S.C. § 1415(k)(2), makes their applicability questionable in a situation where a student possesses illegal drugs.  The issue of compliance with these additional requirements were furthermore obscured by the volume and nature of claims raised by MP before the school board and the administrative hearing.  No reasonable inference of bad faith, gross misjudgment, or intentional discrimination can be sustained.

### B.    § 1983

To the extent MP's § 1983 claims allege a violation of his substantive due process rights, the claims are legally untenable.  The decision concerning MP's alternative placement is an executive act and therefore implicates substantive due process interests only if the right affected is a fundamental right, that is, a right that is "implicit in the concept of ordered liberty."  C.B. v. Driscoll, 82 F.3d 383, 387 (11th Cir. 1996).  Public schooling is not a fundamental right protected by substantive due process.  Id. (citing Plyler v. Doe, 457 U.S. 202, 221 (1982).

To the extent MP's 1983 claim is based on procedural due process, any interest of MP that is entitled to due process protection necessarily arises from the IDEA.  The IDEA provides a comprehensive means for vindicating MP's due process rights and therefore precludes resort to § 1983 for additional protection.  Padilla v. Sch. Dist. No. 1, 233 F.3d 1268, 1272-74 (10th Cir. 2000).

### C.    Florida Educational Equity Act

A plaintiff must establish at least "deliberate indifference" as a basis for recovery under the Florida Educational Equity Act.  Hawkins v. Sarasota County Sch. Bd., 322 F.3d 1279, 1286 (11th Cir. 2003).  As explained with respect to Plaintiffs' claims under the Rehabilitation Act and the ADA, no reasonable inference of discrimination can be sustained.

### D.    Negligence

Plaintiffs' claim for negligence against educational officials for failure to

provide an adequate education is in essence a claim for educational malpractice.

The claim is not cognizable under Florida law. Fla. Dep't of Health and Rehab.

Serv. v. B.J.M., 656 So. 2d 906, 914 (Fla. 1995).  Accordingly, Plaintiff's

negligence claims must be dismissed with prejudice.

### E.   Conclusion

MP's dismissed IDEA claims cannot be relied upon as a basis for claims

under the Rehabilitation Act or ADA because MP has not properly exhausted

administrative remedies.  Dismissal of these claims without prejudice is therefore

appropriate.  Babicz, 135 F.3d at 1422.  Relief as to all other non-IDEA claims is

denied.

Based on the foregoing, it is

ORDERED AND ADJUDGED:

1.      Defendants' First Motion for Judgment on the Administrative

Record (doc. 52) is granted in part and denied in part.  The motion is denied as

to MP's placement at the Second Chance School and entitlement to

reimbursement for private schooling.  The motion is granted as to all other IDEA

claims, which are remanded for an administrative due process hearing.

2.      Defendants' Second Motion for Judgment on the Administrative

Record (doc. 53) is granted.

3.      Defendants' Third Motion for Judgment on the Administrative

Record (doc. 54) is granted.

4      Defendants' Motion for Leave to File a Reply in Support of Defendant's First Partial Motion for Summary Judgment Regarding Non-IDEA Issues (doc. 79) is granted.

5.      Defendants' First Partial Motion for Summary Judgment Regarding Non-IDEA issues (doc. 51) is granted in part and denied in part.  The motion is denied as to Rehabilitation Act and ADA claims based on dismissed IDEA claims to the extent Defendants seek a dismissal of these claims with prejudice.  The motion is granted as to all other claims.

6.      Defendant's Second Partial Motion for Summary Judgment (doc. 55) is granted.

7.      This case shall proceed on the only remaining claim, which concerns MP's placement at the Second Chance School and entitlement to reimbursement for private schooling.

8.      Plaintiffs' Motion for (1) Leave to File Dispositive Motions on Individuals with Disabilities Education Act Claims That Exceeds Page Limit and (2) Leave to File Beyond Time Limit (doc. 62) is denied.  The Court has, however, reviewed the Plaintiffs' motion and considered the arguments made in making the rulings in this order.  The Court will, furthermore, allow Plaintiff to file a dispositive motion on the only remaining claim (concerning MP's placement at the Second Chance School and entitlement to reimbursement for private schooling) on or before October 30, 2005.  Defendants shall have 14 days after

service of the motion to respond.

      9.    All other pending motions (docs. 41, 43, 48, 56, and 65) are denied as moot.

      DONE AND ORDERED this 30th day of September, 2005.

      *s/ Stephan P. Mickle*

      Stephan P. Mickle
      United States District Judge